Nadia P. Bermudez, Bar No. 216555
Phillip E. Stephan, Bar No. 283818
KLINEDINST PC
501 West Broadway, Suite 600
San Diego, California 92101
(619) 239-8131/FAX (619) 238-8707
nbermudez@klinedinstlaw.com
pstephan@klinedinstlaw.com

Attorneys for Defendant,
PILLER POWER SYSTEMS, INC. i/s/h/a
PILLER USA, INC. d/b/a PILLER
POWER SYSTEMS (erroneously sued as
PILLER USA, INC.)

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN JUREK,<br><br>            Plaintiff,<br><br>    v.<br><br>PILLER USA, INC., a New York Corporation, d/b/a PILLER POWER SYSTEMS; AND does 1 THROUGH 50,<br><br>            Defendants. | Case No. '21CV0150 W    KSC<br><br>**DEFENDANT PILLER POWER SYSTEMS, INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) DIVERSITY**<br><br>[Filed concurrently with Civil Cover Sheet, Notice of Interested Parties and Corporate Disclosure Statement; Declaration of Dean Reginald Charles Richards in Support]<br><br>Complaint Filed: November 18, 2020 |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. sections 1332, 1441, and 1446, Defendant PILLER POWER SYSTEMS, INC. i/s/h/a PILLER USA, INC. d/b/a PILLER POWER SYSTEMS ("Piller") hereby removes to this Court the state action described below.

1. On November 18, 2020, an action was commenced by Plaintiff, JUSTIN JUREK ("Jurek"), in the Superior Court of California, County of San

///

Diego, entitled *Justin Jurek v. Piller USA, Inc., a New York Corporation, d/b/a Piller Power Systems*, case number 37-2020-00042375-CU-BT-CTL.

2. Plaintiff Jurek was Piller's West Coast Sales Manager until early July 2020 when he resigned. See Ex. "A" for a true copy of the summons and complaint (the "Complaint") filed by Jurek in the Superior Court of California for the County of San Diego on or about November 18, 2020; see also accompanying January 26, 2021 Declaration of Dean Reginald Charles Richards in Support of Defendant's Notice of Removal ("Richards Decl."). Before he resigned, he was responsible for approximately $1.73 million in annual revenues for Piller and nearly $715,000 in annual profits. See Richards Decl.

3. This case concerns an attempt by Plaintiff to flout his contractual non-compete, non-disclosure and non-solicitation obligations with Piller (the "Agreements"), including his obligations not to disclose or use Piller's trade secrets, not to make false statements about Piller and not to solicit Piller's customers, as well as his related statutory and common law obligations. See Ex. "A"; Richards Decl. The Agreements contain a New York forum selection clause, and Piller's principle place of business is in New York. See Ex. "A" at Exs. "A" and "B" thereto; Richards Decl.

4. The subject Complaint was filed shortly after Piller sent a cease and desist letter to Jurek. The Complaint seeks declaratory relief and injunctive relief, as well as restitution for the alleged violation California's unfair competition law (Business and Professions Code §16600 and §17700, et seq.), concerning the Agreements and their enforceability. See Ex. "A". Piller denies that Plaintiff is entitled to the declaratory relief asserted in his Complaint and denies any liability as to Plaintiff's claims.

5. Piller received a copy of the initial pleading setting forth the claim for relief upon which the state court action is based by service of the Summons and

/ / /

1 Complaint on December 28, 2020.  True and correct copies of the Summons and
2 Complaint are attached hereto as Exhibits 1 and 2.

      6.     True and correct copies of the following documents are attached as set forth beneath.

| DOCUMENT | Exhibit |
|---|---|
| Plaintiff's Complaint, including exhibits | A |
| Summons | B |
| Civil Case Cover Sheet | C |
| Notice of Case Assignment | D |
| State Court Docket | E |

      7.     <u>Removal is Timely</u>. Piller first received a copy of the Complaint and Summons on December 28, 2020. Accordingly, this Notice of Removal is being filed within thirty days of Piller's receipt of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, as required by 28 U.S.C. § 1446(b). Piller has not yet answered the Complaint nor filed any otherwise responsive papers in the Superior Court matter, and there have been no further proceedings in the Superior Court of California for the County of San Diego to date.

      8.     This court has diversity jurisdiction under 28 U.S.C. § 1332.

      9.     <u>There Is Complete Diversity</u>. This controversy is between citizens of different states (Piller and Jurek). As set forth below, there is complete diversity and this matter meets the diversity of citizenship requirement.  See 28 U.S.C. § 1332(a) and (c).

      a.     Plaintiff Justin Jurek is an individual residing in California, currently engaged in employment with Hitec Power Production, Inc. ("Hitec") in California. See Complaint, at ¶ 4.

/ / /
/ / /

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

   b. Piller is a corporation incorporated and headquartered in the state of New York. See Complaint, at ¶ 5; see also Richards Decl., at ¶ 7. Plaintiff admits Piller is not a resident of California. See Complaint, at ¶ 7.

10. Piller is not aware of any other defendants that have been named or served in the state court action.

11. <u>The Amount in Controversy Exceeds the $75,000 Requirement</u>. Plaintiff's Complaint seeks declaratory relief and injunctive relief, in addition to an award of attorneys' fees and costs, without setting forth an actual sum demanded. See Prayer for Relief, at Page 10 of Plaintiff's Complaint. Where the complaint does not identify the amount of damages sought, the removing defendant has the burden of proving the amount in controversy requirement is met. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). However, the amount in controversy well exceeds $75,000, exclusive of interest and costs. The amount in controversy requirement is satisfied when "it is more likely than not" that the amount alleged exceeds the jurisdictional minimum of $75,000. See *Sanchez v. Monumental Life Ins.*, 95 F.3d 856, 862 (9th Cir. 1996) ("defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount").

   a. In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation. The test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce, which a defendant must prove by a preponderance of the evidence. *Corral v. Select Portfolio Servicing, Inc.* (9th Cir. 2017) 878 F.3d 770, 775; see also *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977).

   Here, the amount in controversy requirement is satisfied because, as explained further below, it is more likely than not that the amount in controversy exceeds the jurisdictional minimum of $75,000, on, at least, three independent

grounds (each of which may satisfy the jurisdictional requirement): (1) the profits earned on business generated by Jurek during the period immediately preceding his termination of employment with Piller exceeds $75,000, (2) the revenues lost by Piller since he terminated his employment with Piller likely exceed $75,000, or (3) Jurek's salary or the likely financial impact of his competition and violation of his non-disclosure of trade secrets and confidential information and non-solicitation of Piller's customers exceed $75,000.

   b. *Profits Earned On Business Generated By Jurek Exceeded $75,000*

    i. "Where a plaintiff seeks an injunction preventing the enforcement of a non-competition clause, courts usually will look to the profits earned by the employer on business generated by the employee during the period immediately preceding his termination to determine the amount in controversy." *Luna v Kemira Specialty, Inc*., 575 F Supp. 2d 1166, 1172 (C.D. Cal. 2008) (citations and internal quotation marks omitted). See also *Meyer v. Howmedica Osteonics Corp.,* No. 14CV2496, 2015 U.S. Dist. LEXIS 20110, at *9, 2015 WL 728631, at *8 (S.D. Cal. Feb. 19, 2015) (same); *Mechanix Wear, Inc. v Performance Fabrics, Inc*., No. 2:16-cv-09152, 2017 U.S. Dist. LEXIS 13357, at *7 (C.D. Cal. Jan. 31, 2017) (same); *Mahoney v. Depuy Orthopaedics, Inc*., No. CIV F 07-1321 AWI/SMS, 2007 WL 3341389, *4 (E.D. Cal, Nov. 8, 2007) (same).

    ii. Here, for the period preceding his termination, Jurek was responsible for servicing Piller customers that generated annual revenues of approximately $1.73 million, and annual profits of approximately $715,000, or nearly a 40% margin on revenues generated.  See Richards Decl.

   c. *Revenues Lost By Piller Exceed $75,000*

    i. Alternatively, "[c]ourts have also examined the revenues generated by an employee and the revenues lost by the employer in determining whether the jurisdictional minimum has been met." *Mahoney*, 2007 WL 3341389 at

*4 (citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 510 (6th Cir. 1992); *Premier Industrial Corp. v. Texas Industrial Fastener Co.*, 450 F.2d 444, 446-47 (5th Cir. 1971); *Robert Half Int'l, Inc. v. Van Steenis*, 784 F.Supp. 1263, 1265-66 (E.D. Mich. 1991); *Basicomputer Corp. v. Scott*, 791 F. Supp. 1280, 1286 (N.D. Ohio 1991); and *USAchem, Inc. v. Goldstein*, 512 F.2d. 163, 170 (2d Cir. 1975) (relying on "volume of sales involved")).

    ii. Here, the revenues lost as a result of Jurek's termination of his employment with Piller are being calculated but are believed to be in excess of $75,000. See Richards Decl.

  d. *Jurek's Salary and The Likely Financial Impact of His Breaches Each Likely Exceed $75,000*

    i. Alternatively, courts have considered the plaintiff's salary or the likely financial impact of plaintiff's competition during the restrictive covenant period. *Meyer v. Howmedica Osteonics Corp.*, Case No. 14-CV-2496 AJB NLS, 2015 U.S. Dist. LEXIS 20110 at *9 (S.D. Cal. 2015); see, e.g., *Davis v. Adv. Care Techs., Inc.*, No. CIV S 06-2449 DFL DAD, 2007 U.S. Dist. LEXIS 32348, at *7 (E.D. Cal. May 2, 2007) ("Judging by his compensation when employed by defendants, [Plaintiff] would stand to lose well over $75,000 if he were prevented from working in his new position[.]"); see also *Harstein v. Rembrandt IP Solutions*, LLC, 2012 WL 3075084 at *4 (salary of over $75,000 sufficient to show amount in controversy in excess of $75,000). As explained in *Meyer*, "[f]rom the employee's point of view, courts will look to employee's current salary from the new employer, because if the restrictive covenant clause is enforced, the employee stands to lose his ability to earn that salary." *Id.*, 2015 U.S. Dist. LEXIS 20110, at *9 (citations omitted).

    ii. The value of Jurek's services exceeds $75,000. Jurek worked for Piller for nearly ten years (i.e., November 2010 through July 2020). During his employment with Piller, Jurek's base salary, alone, before bonuses,

6
DEFENDANT PILLER USA, INC.'S NOTICE OF REMOVAL OF ACTION

1 always exceeded $75,000, and his most recent base salary was $102,100.  See
2 Richards Decl.  His current salary at his current employer more likely exceeds that.
3 See Richards Decl.  Thus, more than $75,000 is at issue under the applicable
4 authority.

5           e. *The Value to Piller of Protecting Confidential Information,*
6 *Including Trade Secrets, Exceeds $75,000*

7              i. Further, "[w]here the object of the litigation is a
8 noncompetition agreement designed to protect a company's confidential
9 information, the value to the company of protecting that information is the amount
10 in controversy." See *Union Pacific R. Co. v. Mower*, 219 F. 3d 1069, 1071 n.1 (9th
11 Cir. 2000) (noting that the "value to [the employer] of protecting its confidential
12 information from disclosure far exceeded the requisite jurisdictional amount [of
13 $75,000]."); *Meyer*, 2015 U.S. Dist. LEXIS 20110 at *10; see also *Davis v. Adv.*
14 *Care Techs., Inc*., No. CIV S 06-2449 DFL DAD, 2007 WL 1302736, at *2 (E.D.
15 Cal. May 2, 2007); *Hartstein v. Rembrandt IP Solutions, LLC*, 2012 WL 3075084,
16 at *4 (N.D. Cal. July 30, 2012) (denying motion to remand and finding that value of
17 trade secrets and confidential information known to plaintiff satisfied the amount in
18 controversy).

19              ii. Piller's at-issue Agreements with Jurek protect Piller's
20 highly valuable trade secret and confidential information. See Ex. "A" at Exs. "A"
21 and "B" thereto. The valuation of trade secret and confidential information is
22 necessarily "inexact," but courts have routinely found the amount in controversy
23 satisfied based on an employer's reasonable valuation of its confidential
24 information. *Meyer*, 2015 U.S. Dist. LEXIS 20110 at *10; *Johnson v. ISCO Indus*.,
25 No. 08-CV-485, 2008 WL 4999274, at *2 (E.D. Wisc. Nov. 21, 2008) ("A valuation
26 of [the] misappropriation of customer goodwill and confidential information is
27 difficult and inexact[.]"); see also *Scoff v. Ralcorp Holdings, Inc*., No. 06-CV-538,
28 2006 WL 3210337, at *2 (S.D. Ill. Nov. 6, 2006) (finding that a defendant

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

employer's claims that a judgment rendering the Plaintiff employment agreement void and unenforceable is valued at more than $75,000 satisfies the amount in controversy requirement because "unless it appears to a 'legal certainty' that the amount will not exceed $75,000, jurisdiction should not be denied.").

    iii. The value to Piller (and its competitors) of the trade secrets and confidential information known to Jurek far exceeds $75,000. See Richards Decl.  For example, in order to perform their responsibilities effectively, Jurek had access to confidential and proprietary information concerning Piller's (i) business operations, administrative and training processes and procedures, financial information, products (including the technical aspects, engineering features, development history, operational instructions, and material composition thereof), pricing, manufacturing processes, research and development programs, efficacy testing, analysis of competitive products, and information concerning specialized product development and test product lines; (ii) sales and marketing strategies; (iii) customers, including but not limited to customer lists, pricing information, production information, analytical results of competitive product comparisons, customer marketing data and purchasing patterns, applicable discounts, and planned research and development; (iv) corporate, strategic, and business data; and (v) other formulae, patterns, devices, or compilations of information used in the business of Piller and which gives Piller an opportunity to obtain an advantage over its competitors who do not know or us it. See Ex. "A" at Exs. "A" and "B" thereto. Piller has spent millions of dollars and many years developing this trade secret and confidential and proprietary information that is so vital to its success. See Richards Decl. at ¶ 13.

    iv. During his employment with Piller, Jurek had access to, among other things, Piller's customer lists, confidential pricing, and applicable margins for the accounts he serviced. Richards Decl. Jurek also had access to Piller's confidential cost information on its products and services. *Id*. Piller values

this information well in excess of $75,000. *Id*. Compromising Piller's trade secret and confidential information will give any competitor of Piller, including Jurek's current employer, an unfair competitive advantage, with the capacity to inflict millions of dollars' worth of damages to Piller. See Richards Decl. Accordingly, the amount in controversy exceeds $75,000. See e.g., *Davis*, 2007 WL 1302736, at *2 ("Given the undisputed nature and scale of defendants' business, the value of the trade secrets and confidential information known to [plaintiff] surely exceeds $75,000.").

    v. In addition, Jurek has solicited Piller's customers in direct violation of the Agreements and has made demonstrably false statements about Pillers' products and services.  The damages caused by Jurek's improper conduct, although "inexact" (*Meyer*, 2015 U.S. Dist. LEXIS 20110 at *10) and difficult to assess at this point, likely far exceed $75,000.

  Accordingly, the amount in controversy requirement of 28 U.S.C. §1332 has been met and this action is removable pursuant to 28 U.S.C. §1441.

  12. <u>Venue Is Appropriate</u>.  Venue is appropriate in this Court because the removed action was filed in the Superior Court, San Diego County, California. Piller believes the proper forum for any disputes between the parties is in New York, e.g., the United States District Court for the Southern District of New York, based on a contractual venue provision contained in the Agreements.[1]

  13. As required by 28 U.S.C. § 1446(d), Piller will provide notice of the filing of this notice to Plaintiff and to the clerk of the Superior Court for the County of San Diego, where the action is currently pending. Piller reserves the right to amend or supplement this Notice of Removal.

---

[1] In a blatant attempt to deprive Piller of its contracted-for, choice of forum, Jurek commenced this action after he was sent a cease and desist letter for his violations of the provisions in the Agreements and in the midst of discussions with his counsel in attempt to resolve those issues.

14. All fees required by law in connection with this notice have been filed by Defendant Piller.

Piller respectfully requests that this matter be removed to, and proceed in, this Court, and that no further proceedings in this matter take place in the Superior Court, San Diego County, California.

KLINEDINST PC

DATED: January 27, 2021

By: /s/ Nadia P. Bermudez
Nadia P. Bermudez
Phillip E. Stephan
Attorneys for Defendant,
PILLER POWER SYSTEMS, INC. i/s/h/a PILLER USA, INC. d/b/a PILLER POWER SYSTEMS (erroneously sued as PILLER USA, INC.)

19181367.5

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101